

1  MARC J. FAGEL (Cal Bar No. 154425)
2  PATRICK MURPHY (Admitted in N.Y.)
   ROBERT S. LEACH (Cal Bar No. 196191)
3  SUSAN FLEISCHMANN (Cal Bar No. 207194)

4  Attorneys for Plaintiff
   SECURITIES AND EXCHANGE COMMISSION
5  44 Montgomery Street, Suite 2600
   San Francisco, California  94104
6  Telephone:  (415) 705-2500
   Facsimile:   (415) 705-2501

7

8                   UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11  SECURITIES AND EXCHANGE COMMISSION,    Civil Action No.    C 07    2821

12              Plaintiff,

13        vs.                                COMPLAINT

14  BROCADE COMMUNICATIONS SYSTEMS,
15  INC.,

16              Defendant.

17

18

19        Plaintiff Securities and Exchange Commission (the "Commission") alleges:

20                        **SUMMARY OF THE ACTION**

21        1.      From at least 2000 through 2004, certain former officers of Brocade Communications

22  Systems, Inc. ("Brocade" or "the Company") – a San Jose-based computer networking company –

23  caused the Company to significantly and fraudulently overstate its publicly reported income.  These

24  actions were primarily carried out through the activities of the former CEO, who routinely provided

25  extra remuneration to employees through backdated stock options while falsifying documents in order

26  to avoid recording the required compensation expenses on the Company's financial statements.

27        2.      Pursuant to well-settled accounting principles in effect throughout the relevant period,

28  Brocade informed its shareholders and the investing public that it did not record compensation

COMPLAINT

1  expenses for stock option grants to employees because those grants were made at the current market

2  price, i.e. "at-the-money." However, in truth, certain individuals at Brocade were regularly granting

3  employee stock options that were "in-the-money," and for which it was required to record an expense

4  in its financial statements. In order to hide the negative impact these expenses would have upon

5  Brocade's reported income, such individuals falsified records to create the appearance that the options

6  had been granted at the market price on an earlier date. By falsifying the dates on which options were

7  purportedly granted, Brocade reported materially understated expenses, overstated income, and

8  falsely represented in certain Commission filings that the Company had incurred no costs for options

9  grants.

10       3.      As a result of the acts alleged in this Complaint, Brocade violated the antifraud

11  provisions of the federal securities laws, falsified books and records, and falsely reported its financial

12  results. The Commission seeks an order enjoining Brocade from future violations of the securities

13  laws, requiring it to disgorge ill-gotten gains and pay civil monetary penalties, and providing other

14  appropriate relief.

15                          **JURISDICTION AND VENUE**

16       4.      This Court has jurisdiction over this action pursuant to Sections 20(b) and 22(a) of the

17  Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b) and 77v(a), and Sections 21(d), 21(e)

18  and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d), 78u(e) and

19  78aa. The defendant, directly or indirectly, made use of the means and instrumentalities of interstate

20  commerce, of the mails, or of the facilities of a national securities exchange in connection with the

21  acts, practices and courses of business alleged in this complaint.

22       5.      This district is an appropriate venue for this action under Section 22 of the Securities

23  Act, 15 U.S.C. § 77v, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa. The transactions, acts,

24  practices and courses of business constituting the violations alleged herein occurred within the

25  Northern District of California, and the defendant may be found in this district.

26                          **INTRADISTRICT ASSIGNMENT**

27

28

6.    Assignment to the San Francisco Division is appropriate pursuant to Civil Local Rule 3-2(e) because the related litigation of *SEC v. Reyes, et al.*, Case No. C-06-4435 CRB is pending in that Division.

## DEFENDANT

7.    Brocade Communications Systems, Inc. is a Delaware corporation based in San Jose, California, that develops and sells storage networking products.  Since May 1999 when it completed its initial public offering of stock, Brocade's securities have been traded on the Nasdaq National Market, and the Company has had common stock registered with the Commission under Section 12(g) of the Exchange Act.  At all times relevant to this action, Brocade used a fiscal year ending on the last Saturday in October.

## FACTUAL ALLEGATIONS

### Brocade Misrepresented Its Employee Stock Option Program

8.    Brocade became a public company in May 1999 and quickly experienced substantial growth in revenues and in the size of its operation.  Between October 1999 and October 2002 Brocade increased the size of its workforce more than six-fold, hiring over 1,150 employees.

9.    To recruit and retain key employees, Brocade made liberal use of employee stock options as a form of compensation.  The stock options gave employees the right to buy Brocade's stock at a set price, called the exercise price or "strike" price.  The value of the options to the employees increased to the extent the market price of Brocade's stock exceeded the strike price of the options.

10.    Under the accounting rules in effect from the time Brocade became a public company in 1999 through 2004, U.S. public companies were permitted to grant stock options to employees without recording an expense so long as the strike price of the option was at or above the market's closing price for the stock on the day the options were granted.  However, for any options granted "in-the-money" – that is, with a strike price below the market price when granted – public companies were required to record a compensation expense in their financial statements.  Consequently, granting in-the-money options to employees could have a significant impact on the expenses and income (or

1    loss) reported to the shareholders of a public company.  The accounting rules also specified that a

2    company must recognize compensation expense if it granted options to a non-employee.

3           11.    As a public company, Brocade filed with the Commission annual reports that included

4    audited financial statements, certified by the Company's outside auditors.  Brocade's public filings

5    affirmatively stated that the Company accounted for its stock options granted to employees in

6    accordance with generally accepted accounting principles, also known as GAAP, which are the

7    accounting conventions, standards, and rules required for preparing financial statements.  GAAP

8    required an expense to be recorded for stock options granted at prices below the market value for the

9    stock on the date of the grant.  Brocade made the statements about accounting for stock options in

10   accordance with GAAP in the notes to its audited financial statements, included in its annual reports

11   to shareholders, filed with the Commission on Form 10-K, for its fiscal years 2000, 2001, 2002 and

12   2003.  Brocade's annual reports on Form 10-K for its fiscal years 2000, 2001, and 2002 represented

13   that, with the exception of certain pre-IPO options granted in 1999, "[n]o deferred stock

14   compensation related to any other periods had been recorded"  Also, Brocade's annual report filed on

15   Form 10-K for fiscal year 2003 represented that, following this rule, the Company did not record any

16   expense for stock options because the strike price for the options granted always equaled the trading

17   price on the date of grants.

18          12.    The same claim, that Brocade accounted for its stock options granted to employees in

19   accordance with GAAP, and that no compensation expense was recorded, was set forth in the notes to

20   the unaudited financial statements included with each of its quarterly reports filed on Form 10-Q for

21   the quarters ended April 26, 2003, July 26, 2003, January 24, 2004, May 1, 2004, and July 31, 2004.

22   The representations to Brocade's shareholders in its annual and quarterly filings about the Company's

23   stock option program were untrue.

24                          **The Scheme to Backdate Option Grants**

25          13.    After Brocade became a public company, Brocade had in place stock option plans,

26   including a plan under which the CEO was given the authority to grant stock options to employees

27   (other than senior officers and directors), as the sole member of a "Compensation Committee" that

28   acted as the "Administrator" of the plan.

1    14.    During the period beginning no later than 2000 through 2004, the CEO used the

2  authority delegated to him to choose when to grant options to non-officer employees, as well as how

3  many options to grant.  To carry out the options grant scheme, the CEO directed employees in the

4  human resources department to prepare documentation of the options grants to employees for his

5  signature.  In particular, the CEO was provided with a list (by name of employee, number of options,

6  hire date for new hires, and other information) of options granted at a purported "Compensation

7  Committee Meeting" occurring on a given date.  The CEO was also simultaneously provided with

8  Brocade's stock price history over a period of up to three months, highlighting the lowest closing

9  price during the past period.  The CEO signed the documentation for each such grant, attesting that

10  he, as the sole member of the Compensation Committee had granted the options to the specified

11  persons on that date.  The documentation purported to specify the date on which the Compensation

12  Committee meeting occurred; in reality the date was selected after the fact because it represented the

13  date with the lowest (or nearly the lowest) closing stock price in the period.

14    15.    The minutes of the purported Compensation Committee meeting that documented the

15  options grants were provided to other persons at Brocade who were responsible for recording the

16  grants in Brocade's books and records and preparing the Company's financial statements.  Because

17  the documentation falsely represented that the options were granted on an earlier date and that the

18  exercise price for the grants was the earlier market price, the Company did not record an expense

19  related to the grants in its financial statements.

20    16.    On at least nine occasions between January 2, 2001 and July 2, 2002, the Company

21  provided employees with "in-the-money" options while evading the requirement that it incur a

22  compensation expense related to those grants.  These grants (granting options to purchase over 43

23  million shares) were purported to have occurred on January 2, 2001, April 17, 2001, July 23, 2001,

24  October 1, 2001, October 30, 2001, November 28, 2001, January 22, 2002, February 28, 2002, and

25  July 2, 2002.  However, these grant dates were false and the options were actually granted at a later

26  time and then backdated to reflect the earlier date.

27    17.    During the 10 consecutive fiscal quarters beginning with Brocade's third quarter

28  ended July 31, 2000, through the fourth quarter ended October 26, 2002, Brocade granted stock

1   options to employees at the quarterly low stock price in 8 of the 10 quarters, and with exercise prices

2   near the quarterly low in the other two quarters, further evidencing that options were being backdated.

3       18.    The scheme to backdate stock options continued during 2003 and 2004. On at least

4   six occasions between August 15, 2003 and October 20, 2004, Brocade backdated options grants to

5   provide employees with "in-the-money" options while evading the requirement that Brocade incur a

6   compensation expense related to those grants. These backdated grants (granting options to purchase

7   over 9 million shares of stock) were purported to have occurred on August 15, 2003, October 20,

8   2003, January 22, 2004, February 26, 2004, March 22, 2004, and June 21, 2004.

9       19.    During Brocade's five consecutive fiscal quarters beginning with the quarter ended

10  October 26, 2003, through the quarter ended October 30, 2004, Brocade made 32 option grants. Of

11  those grants, 19 grants to over 1,000 employees (granting options to purchase a total of approximately

12  16 million shares) were priced at the weekly low closing price for Brocade's stock, and an additional

13  three grants were priced within just $0.03 of the weekly low.

14                    **Brocade Falsely Reported its Financial Results**

15      20.    The options backdating scheme caused Brocade to materially misstate its financial

16  results during the period beginning no later than 2000 through 2004. During this period, relying upon

17  the falsified Compensation Committee Meeting minutes supplied to them, persons working in

18  Brocade's finance department recorded the fraudulent information into Brocade's books and records

19  immediately upon receiving the Compensation Committee Meeting minutes. From those fraudulent

20  books and records, the persons in the finance department incorporated the grants into Brocade's

21  financial statements; because the documents did not indicate that any in-the-money options had been

22  granted, Brocade failed to record any compensation expense related to the backdated options grants.

23      21.    Brocade also provided the same documentation about grant dates and employee hiring

24  to the Company's external auditors in connection with their annual audits of Brocade's financial

25  statements. Relying on the false documentation supplied to them, Brocade's auditors concurred with

26  the Company's assessment that no compensation expense needed to be recorded for the options

27  granted to employees.

28

1       22.     Based on the false and misleading information recorded in its books and records,

2  Brocade filed and publicly announced materially false and misleading financial results for its fiscal

3  years 2000, 2001, 2002, and 2003, and publicly announced materially false and misleading financial

4  results for fiscal year 2004.

5       23.     Brocade's failure to file accurate financial statements resulted in an artificial inflation

6  of the Company's stock price.  During the period that its false financial statements were publicly

7  available, Brocade engaged in a convertible debt offering and utilized its stock to acquire a company.

8  During this time, Brocade also filed registration statements with the Commission recording the debt

9  offering as well as multiple stock offerings to Company employees.

10       24.     Late in 2004, the Audit Committee of Brocade's board of directors began to

11  investigate allegations by a former employee who claimed to have been issued back-dated options.

12  During the course of the Audit Committee's investigation, Brocade announced a possible restatement

13  on January 6, 2005, and on January 24, 2005 announced restated financial results for 1999 through

14  2004, to record expenses for options grants to employees.  Brocade concluded that its financial

15  statements required restatement because the documentation regarding options grants that had been

16  signed by the CEO was unreliable.  The restated results had the following impact: (1) net loss for the

17  2004 fiscal year increased from $1.3 million to $32 million (i.e., net loss was understated by 95.9%);

18  (2) net loss for fiscal year 2003 increased from $136 million to $146 million; (3) net income for fiscal

19  year 2002 increased from $60 million to $126 million; and (4) income for fiscal years 1999 through

20  2001 declined by a total of $303 million.

21       25.     On May 16, 2005, the Company announced a further restatement (filed on amended

22  Form 10-K dated November 22, 2005) to include additional stock-based compensation expense of

23  $0.9 million related to options grants between August 2003 and November 2004.

24                      **FIRST CLAIM FOR RELIEF**

25                 *Violations of Section 17(a) of the Securities Act*

26       26.     The Commission realleges and incorporates by reference Paragraphs 1 through 25,

27  above.

28

1    27.    By engaging in the conduct described above, Brocade, directly or indirectly, in the

2  offer or sale of securities, by the use of the means or instruments of transportation or communication

3  in interstate commerce or by use of the mails:

4         (a)    with scienter, employed devices, schemes or artifices to defraud;

5         (b)    obtained money or property by means of untrue statements of a material fact or

6                omissions to state a material fact necessary in order to make the statements

7                made, in the light of the circumstances under which they were made, not

8                misleading; and

9         (c)    engaged in transactions, practices, or courses of business which operated or

10                would operate as a fraud or deceit upon purchasers of securities.

11    28.    By reason of the foregoing, Brocade has violated, and unless restrained and enjoined

12  will continue to violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

13                        **SECOND CLAIM FOR RELIEF**

14          *Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder*

15    29.    The Commission realleges and incorporates by reference Paragraphs 1 through 25,

16  above.

17    30.    By engaging in the conduct described above, Brocade, with scienter, directly or

18  indirectly, in connection with the purchase or sale of securities, by use of means or instrumentalities

19  of interstate commerce or of the mails, or of facilities of a national securities exchange:

20         (a)    employed devices, schemes, or artifices to defraud;

21         (b)    made untrue statements of a material fact or omitted to state a material fact

22                necessary in order to make the statements made, in the light of the

23                circumstances under which they were made, not misleading; and

24         (c)    engaged in acts, practices, or courses of business which operated or would

25                operate as a fraud or deceit upon other persons, including purchasers and

26                sellers of securities.

27

28

1    31.    By reason of the foregoing, Brocade has violated, and unless restrained and enjoined

2    will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17

3    C.F.R. § 240.10b-5.

### THIRD CLAIM FOR RELIEF

*Violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1,*

*and 13a-13 Thereunder*

7    32.    The Commission realleges and incorporates by reference Paragraphs 1 through 25,

8    above.

9    33.    Based on the conduct alleged above, Brocade violated Section 13(a) of the Exchange

10    Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, and 13a-13, 17 C.F.R. §§ 240.12b-20, 240.13a-1,

11    and 240.13a-13, which obligate issuers of securities registered pursuant to the Exchange Act to file

12    with the Commission annual and quarterly reports that, among other things, do not contain untrue

13    statements of material fact or omit to state material information necessary in order to make the

14    statements made, in the light of the circumstances under which they were made, not misleading.

### FOURTH CLAIM FOR RELIEF

*Violations of Section 13(b)(2)(A) of the Exchange Act*

17    34. The Commission realleges and incorporates by reference Paragraphs 1 through 25 above.

18    35. Based on the conduct alleged above, Brocade violated Section 13(b)(2)(A) of the

19    Exchange Act, 15 U.S.C. §78m(b)(2)(A), which obligates issuers of securities registered pursuant to

20    Section 12 of the Exchange Act, 15 U.S.C. § 78*l*, to make and keep books, records, and accounts,

21    which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets

22    of the issuer.

### EIGHTH CLAIM FOR RELIEF

*Violations of Section 13(b)(2)(B) of the Exchange Act*

25    36. The Commission realleges and incorporates by reference Paragraphs 1 through 25 above.

26    37. Based on the conduct alleged above, Brocade violated Section 13(b)(2)(B) of the

27    Exchange Act, 15 U.S.C. §78m(b)(2)(B), which obligates issuers of securities registered pursuant to

28

COMPLAINT                                    9

1  Section 12 of the Exchange Act, 15 U.S.C. § 78*l*, to devise and maintain a sufficient system of

2  internal accounting controls.

### PRAYER FOR RELIEF

3

4  WHEREFORE, the Commission respectfully requests that this Court:

5  I.

6  Issue an order permanently restraining and enjoining Defendant and its agents, servants,

7  employees, attorneys, and assigns, and those persons in active concert or participation with them,

8  from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Sections 10(b), 13(a),

9  13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act, 15 U.S.C. §§ 77q(a), 78j(b), 78m(a), 78m(b)(2)(A),

10  78m(b)(2)(B), and Rules 10b-5, 12b-20, 13a-1, 13a-13 and 13a-14 thereunder, 17 C.F.R. §§ 240.10b-

11  5, 240.12b-20, 240.13a-1, 240.13a-13 and 240.13a-14.

12  II.

13  Issue an order directing Defendant to disgorge all wrongfully obtained benefits, plus

14  prejudgment interest.

15  III.

16  Issue an order directing Defendant to pay civil monetary penalties under Section 20(d) of the

17  Securities Act, 15 U.S.C. §§ 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. §§

18  78u(d)(3).

19  IV.

20  Retain jurisdiction of this action in accordance with the principles of equity and the Federal

21  Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that

22  may be entered, or to entertain any suitable application or motion for additional relief within the

23  jurisdiction of this Court.

24

25

26

27

28

1

V.

2    Grant such other and further relief as this Court may determine to be just and necessary.

3

4    Dated: May 30, 2007                           Respectfully submitted,

5

6

7    _____
     Attorney for Plaintiff
8    SECURITIES & EXCHANGE COMMISSION

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28